Good morning, Your Honors. Stacey Tolchin, and I represent Petitioner Menendez. I would like to reserve three minutes of my time for rebuttal. As a preliminary matter, this Court has jurisdiction to review the BIA decision pursuant to 8 U.S.C. § 1252a-2b. That is the provision added by the Real ID Act that applies to legal and constitutional claims. The Court's... Well, just a minute. That's assuming that this is one. And I guess I'm trying to figure out why it is one. Because in ECOMA, ECOMENA, I don't know how to say this. I'm from Idaho, but anyway, ECOMENA. It said, we said, when the BIA exercises discretion under the Exceptional Circumstances Test, which is what this is in, this Court lacks jurisdiction to review the BIA's decision because there's no meaningful standard by which to judge the satisfaction of the Exceptional Circumstances Test. Your Honor, ECOMENA is a case involving a motion to reopen for adjustment of status purely based on the equities. And that's why the Court said that there were no legal standards to apply, and the APA precluded review. But let's assume for a second that the BIA had only issued an order in this case. The last three paragraphs are what we're focusing on in the BIA's order. Let's assume it only had the last paragraph, didn't have the two before it. And the BIA simply said, we've looked at your case, and there are no exceptional circumstances. Okay? We would lack jurisdiction to review that, would we not? I think no. I think there's jurisdiction because of the third line, which says that the post-conviction relief was sought years after the execution of his lawful deportation order. I think that's a legal issue because of the Court's decisions in – Well, let's get to your better argument. Yeah, that doesn't work for me. I mean, I guess – Let me pose this for you, because I think the same question you're going to get – What we're struggling with, you can tell, is exactly this issue. So I think you do need to stick with your better argument. If the BIA turned you down because – solely because there were no exceptional circumstances – I think we lack jurisdiction to consider it. If the BIA turned you down because – what's the other language in the law? Gross miscarriage of justice. If there was not a gross miscarriage of justice, then it may have applied the wrong legal standards. And I'm assuming that is the better legal argument that you're referring to? Well, I'll consider them all, but it's the one I want to hear about. So tell me why. We have an order that has two paragraphs that use the words gross miscarriage of justice, and a third paragraph that uses the word exceptional circumstances. Assume for a second that if they applied the exceptional circumstances test, you're in trouble. How do we know what test they applied? So the gross miscarriage of justice standard comes from Hernandez-Almanza. It applies to collateral attacks. Exactly. And it shouldn't – it's not the right standard to apply to a motion to reopen. So how do we know what standard the BIA applied in this case? Its last paragraph says exceptional circumstances, and that's why I asked you the question. If the other two paragraphs weren't there, it would be easy for me to conclude it applied the exceptional circumstances test. It's all over the place, you know, and so it applies a collateral attack standard, and it applies a motion to reopen standard, and I think it has to go back to the agency to apply the proper standard. Let me ask you a second question. What is there in the statute or in the precedent which says anything about the basis of which it applies the exceptional circumstances test, which is going one step further than Judge Hurwitz has gone? In other words, how does the court have any right, based on ecumena, to even say what the factors are that the IJ or the BIA should use? It seems to me that what the court is saying is this is, as long as they're meeting an exceptional circumstances test, they can talk about miscarriage of justice, they can talk about whatever they think they need to. The bottom line being it's exceptional circumstances. What case do I have that says that just because exceptional circumstances is one area, this is another, they can't use that rationale? There are no cases, but if the underlying reason for the decision is articulated, it can't be an illegal reason. Is it an illegal reason? That's what Judge Smith is asking. What if the board said, look, we'll first look to see if there's a gross miscarriage of justice, applying the collateral stance review test. We don't see one. We'll then look at the whole case to see whether there's any other exceptional circumstance that might require us to act. That would be okay, wouldn't it? If it's alternative, except there is the issue of the remand to the immigration judge. Right. Put that aside for a second. But putting that aside, yes. I do want to direct... So it could do that in the alternative, could it not? It could. It didn't do that here. But if it said, here's one reason, and here's another reason, and both are independent... We'll always reopen if we find a miscarriage of justice, and then we'll also look to see if we see any other exceptional circumstance. The board could say that, couldn't it? It could. I do want to make note that there's two circuits that have addressed this issue of jurisdiction underlying sua sponte decisions. The Seventh Circuit in Zambrano-Reyes, which is 725 Fed 3rd 744, and the Tenth Circuit in an unpublished decision called Mendiola. It's very thorough on that. But what those cases say, and I think I'm with you on this. I'm just trying to figure out which box we fit in. If the BIA has applied an improper legal standard to a motion to reopen, then we can look at that. If it says you can't file a motion to reopen because you're from Mexico, we can say, no, that's not an appropriate rule. We rule against him because he's black. Therefore, we don't find any exceptional circumstances. We can look at those. There are some cases where an exceptional circumstance... I don't know the answer to Judge Smith's question offhand. But the question is, if there is an illegal or improper basis in law for what they do, such as applying the improper standard. The reason was because we can't evaluate exceptional circumstances. But we could evaluate whether there was an error of law. Now, what case tells us that? I think this is analogous to the Afridi case, which looks at the particularly serious crime determination. Because in Afridi, the court says we can look at the legal issues underlying the decision, even though the ultimate decision on what is a particularly serious crime is completely unreviewable. Well, but it seems a little bit... I'm just testing you. It seems a little bit, even in Afridi, that we had something to go on. We had some standard or list of factors to go on to make our determination. In this case, on the exceptional circumstances test, we have no standard. We have no list of factors. We've said because we have no standard and no list of factors, we can't even look at it. And so, therefore, I find your argument... This is just because I want to ask you a tough question. I find your argument that says, well, because they said something about miscarriage of justice, that is absolutely an illegal way to go about it. Because if, in fact, you can use whatever standard you come up with to address exceptional circumstances, I'm having a tough time suggesting that I can get my nose in to determine why they did that. Your Honor, that is what 1252A2D is for. If they give a reason, then it's reviewable if it's a legal reason. If they had just said, we deny, we don't find exceptional circumstances... Well, let me just suggest that that is a legal reason as you term it. Miscarriage of justice, in the broad sense, doesn't necessarily a legal reason. Well, but it cites Hernandez-Almanza, which is a collateral attack. I appreciate that. As I understand your argument, in order to rule for you, we would have to say that they applied the wrong standard and that they applied the miscarriage of justice standard rather than the exceptional circumstances standard. And then the question, I think, that we are struggling with is did they really apply the miscarriage of justice standard or did they really apply the exceptional circumstances standard? Right. Your Honor, I don't think it's clear, but I do think that's why it's important to remand to the judge because I don't think the board can exercise the judge's sua sponte authority. And I'm running out of time, but this is... Cardi v. Shaughnessy was a Supreme Court case that sort of addresses something similar. The regulation gives the immigration judge the authority, not the board. And so that discretion has to be exercised by the judge. But what did the judge do here? The judge denied only on jurisdiction. She said, I can't get to anything here. Because there are no exceptional circumstances. No, because of the departure bar. She relies on a matter of Armendariz and says the departure bar applies. I can't get to any of the arguments. So your argument is that what should have happened here is that the judge should have considered the motion to reopen on the merits. Correct, Your Honor. And possibly could have turned you down for the lack of exceptional circumstances. That's a merits issue. But that the board couldn't do that for the first time because the... See, and that's my... Couldn't the board say, even assuming the departure bar doesn't apply, we're going to turn you down because there are no exceptional circumstances here? Your point is that only the I.J. can do that? That's correct. The authority is with the judge here. I see I'm out of time, so... Thank you, Your Honor. Good morning, Your Honors. May it please the Court, Andrew Nsinga on behalf of the Attorney General. Because of Petitioner's lengthy, unexplained delay, the only way to get this case reopened is through the agency's sui sponte... Right, so this is not a departure bar 90-day case. It's not. Okay, good. And I think that is an important point that Petitioner ignores, is this is not a statutory motion to reopen. There is absolutely no right to reopening. This is a sui sponte reopening. Purely sui sponte reopening. Let's go back to the question we posed before. If this order by the BIA only contained... Did not contain the last paragraph. So when they analyzed the motion to reopen, they just simply said, we don't see the kind of gross miscarriage of justice that will allow a collateral attack. And didn't, at the end, include language talking about exceptional circumstances. Would they be applying the wrong legal standard? No. So the BIA can say we'll only consider sui sponte motions to reopen if, in fact, they meet the standard for collateral attack under these circumstances? It can apply any standard it so fits. Could it say we will only apply the standard to Guatemalans and not to people from El Salvador? Your Honor, such blatant constitutional violations would clearly be a different situation. But this is not a blatant constitutional violation. All right. So your exception, then, is they can do anything except a blatant constitutional violation. They can apply any standard, any guidelines, any permanent situation. Here's the difficulty. We've said, and I agree with our decisions, if the standard is exceptional circumstances, we have no idea what the heck that means. That's up to the BIA, so we can't review it. But if the standard is a settled legal standard, is it a gross miscarriage of justice, then we review that all the time. We might agree with the BIA that one hasn't been established. I'm not sure I see one here. But that's a legal standard that we can review. So if the BIA adopts a purely legal standard for exceptional circumstances, can we review that? No, and for two reasons. First of all, whether the standard is similar to a standard this court might use doesn't mean that is the standard that the agency is using. But in this case, what it's saying is where is here when Naelen sleeps on his right for 15 years? He's a convicted drug dealer. No, no, that's not the question. Yeah, this is a terrible case. It's a terrible case. They'll turn him down later on in the marriage. Forget the case. It's a question of if the BIA were to apply the gross miscarriage of justice test instead of the exceptional circumstances test, would we be able to review that and say you applied the wrong test? No. Or should we say you applied the right test and you applied it correctly? They applied the correct exceptional circumstances test. See, but then we'd get to review them. If they applied a legal test, we'd get to review them. And you don't want us reviewing them, do you? No, Your Honor. They applied the test they announced in their decisions. But what Ekamian says is even in the agency's own decisions, the board said it's not even required to reopen even if there are exceptional situations. But we can't review exceptional circumstances test because there's nothing to measure in that. If you apply the gross miscarriage of justice test, we can review that because there are standards for that test. What it does in a case like this, it says where is he when an alien sleeps on slides rights? Yeah, we don't need as gross miscarriage of justice test. But I know you'd like to talk about the fact. But that's what makes it sui sponte. That's why we're in the sui sponte area. What makes it sui sponte then is then it says, well, look, there are obviously analogous situations. I think what the difficulty is to suggest, as Petitioner does, that it's wrong for the agency to look at analogous situations. It puts the agency in the position of actually saying, well, we should never say anything. That gets the real question I wanted to ask you. Is it just that the agency said, look, we're going to take a look at this case. First, if this had been a collateral attack, it would fail. And we don't see any other exceptional circumstances in this case. Everybody agrees, including your opponent, that that would be OK. So the question is, is that what the agency did? Or did it say we don't find exceptional circumstances because there is no gross miscarriage of justice? It's looking at the gross miscarriage of justice standard as a guideline to think, well, you know, this makes us think about it. But at the end of the day, the agency is sitting in this situation sort of like a court of equity, not of a court of law. Well, here's a situation in which prior to 1996, obviously, when there was no statute limiting reopening. This is how it worked pre-96. So obviously, we think it's indicative. And part of the reason, actually, the agency discusses Hernandez-Almanza is Department of Homeland Security in its response to the motion to reopen discusses this as, you know, here's an analogous situation. So if this order only had the last paragraph, we wouldn't be arguing about this, right? No. It didn't have the two penultimate paragraphs. This would be an easy case. Well, it's already an easy case, Your Honor. They don't have to give a reason. They don't have to give a reason. They do not have to give a reason per ecumene at all. They could have said we deny, period. In fact, and this gets to sort of Petitioner's second point, they don't. You agree that if they had given a reason, they didn't have to give it. If they had given a reason that was unconstitutional, then we could set that aside. You said blatant unconstitutional. I don't know where that principle comes from. But if it's an unconstitutional reason or an illegal reason or it applies to the wrong test, then we can look at it. I think what that question goes to, though. And look at is what is an exceptional circumstance. What that question goes to, though, is whether there is a legal standard here that the agency must apply. The statute says no. The regulations say no. The precedent says no.  Nothing says there is a standard the agency must apply. So can the agency say under this circumstance? I don't know the answer. Maybe I don't know the answer. Can the agency say under this circumstance, look, when somebody who has a conviction is applying because it was later vacated, we're only going to view that as an exceptional circumstance when there is an egregious miscarriage of justice? It certainly can say that. As a standard, it could. So let's assume it adopted that standard. Would that be a reviewable standard? In other words, could they say, nobody's told us what exceptional circumstances mean, but when you deal with this kind of case, we think the test ought to be the same as the miscarriage of justice test. Is that okay? No. I think the difficulty is we have to go back to Acmean. What the agent said is even when it announced the exceptional situations test is the agent said, look, even if that test is met, we do not have to reopen. So the thing is no one, let's be honest, the agency is never going to say if there are gross miscarriage of justice, we must reopen because that would be contrary to the statute. This may be a fool's errand. The agency at the end of the day may say, I don't care what the standard is. This guy's not, we're never going to reopen for him. That's fine. They can do that. What we're here on is a legal issue, which is that whether we have the ability to review their decision not to reopen because they appear to have applied the standard for collateral attack. And so that's what I'm struggling with. Tell me why I shouldn't find that they just, they applied the wrong standard as opposed to made the wrong decision. Their decision is entirely up to them. I didn't promise to say this. But you were at least to send it back to clarify the decision, what it means. What it means is we look at this as an analogous situation and as a guideline. We look at it as an analogous situation. Well, it says where is here, the agency, the alien slept on his rights. We look at it as an analogous situation. Well, but then we can't ignore the final paragraph, the agency's decision, Your Honor, which cites its exceptional circumstances. So we should, should we read, we should read this with, as if they said, and in addition, there are no exceptional circumstances or. Again, it's looking at this as an analogous situation. And an agency is allowed to, we would not fall to district court, say, for looking at a summary judgment case for sort of an analogous situation. We're like, well, this is on the merits, but that's analogous situation. The agency never says that it is applying this and this is its new standard, despite years and years of never applying this as standard. Although if this were a district court, we'd know that it would react to our order within 60 days and we wouldn't worry much about sending it back. One of the things that concerns me about sending stuff back to the BIA is it will be there for the next seven years or six years or four years. Well, you know, that's a difficult one as a convicted drug dealer. Maybe if you concentrate on the cases that are important, you can expedite that. By the way, nobody's saying this guy should be, this guy should get out of this. That's the merits decision up to the board. So the equities don't really matter to me. It's just a legal issue. Well, I think when we are discussing, though, there's a concern about delay. It was petitioner delay, 15 years a convicted drug dealer. It's not our fault, Your Honor. The agency is not obligated to use its own authority, which it may on its own motion reopen, when an alien simply absconds and illegally reenters a convicted drug dealer. But I think quickly one point about this application 1252A2D is it's wrong. A2D is a restoration jurisdiction for things that were taken away by the INA and ARERA. But there is nothing that took away. There was never jurisdiction in the first place. Yeah. And in fact, Mejia-Hernandez already says this, Your Honor. But at the end of the day, this Court has Ecamian, Diaz-Covarrubias, Mejia-Hernandez, Sharma, Goh, and hundreds and hundreds of unpublished decisions. Which there simply is no judicially manageable standard. And this is no different. There's no question. If the BIA said we are applying the exceptional circumstances test and hadn't said when it analyzed everything, the miscarriage of justice test, there wouldn't be a question. The only question we're trying to determine here is whether the BIA really applied the exceptional circumstances test. But it did, Your Honor. And Martinez-Gutierrez's Supreme Court's recent decision says, look, the agency doesn't have to be perfect in its decision. Nobody is asking this agency to be perfect. Believe me. Right. And it's not. That's the standard we can't meet. Right. That's the standard no one can meet, Your Honor. Let's forget that argument. We need to look at the agency decision as a whole. And when it concludes there is no exceptional situation that's going to reopen, we understand what the agency is doing. No argument changes that. You do. I believe you understand what you think the agency is doing. And now we have to try to decide what the agency was doing. We don't, as petitioner does, we don't assume that the agency doesn't know what it's doing. There is a presumption of regularity. All right. Let's assume that then the time's up. Thank you, Your Honor. Thank you. May I ask the Court to dismiss the petition? I think I'm out of time. Yeah. We'll give you one minute if you need it. Okay. 1252HUD is not limited to constitutional issues. It applies to legal and constitutional issues. And just to clarify, there are cases where the Board has found a gross miscarriage of justice in other cases, matter of Farinas and matter of Malone, which are cited in the brief. It's not an insurmountable obstacle. Thank you. But before you finish, the difficulty is I can see the Board saying there was a gross miscarriage and so we're going to reopen. That's not the question. The question is whether or not it can say we don't find a gross miscarriage and we also don't find exceptional circumstances. So the cases that allow it to reopen don't really help me. I guess I, again, want to reiterate, I don't think the Board had the authority to, in the first instance, look at sui sponte reopening. I mean, I think that's really important because the regulations are separate. Yeah. Thank you. Thank you very much. The case is argued and will be submitted.
judges: Reinhardt, Smith, Hurwitz